**Stuart D. WECHSLER, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**SOUTHEASTERN PROPERTIES, INC., et al., Defendants.**

**No. 72 Civ. 1813.**

United States District Court,
S. D. New York.

Nov. 21, 1972.

Opinion April 4, 1974.

Shatzkin & Cooper, New York City by Edward Labaton, New York City, of counsel, for plaintiff.

Schwartz, Burns, Lesser & Jacoby, New York City, by Arnold I. Burns, Erwin Cherovsky, Carl G. Bartholomaus, New York City, of counsel, for defendants Southeastern Properties, Inc. and others.

Kane, Kessler, Preiss, Rand & Proujansky, P. C., New York City, by Edmund Preiss, New York City, of counsel, for defendant Monarch Funding Corp.

Hart & Hume, New York City, by Lester Esterman, New York City, of counsel, for defendants James Henry and Henry McCord Forrester & Richardson.

Howard J. Goldstein, Schneider & Baratta, New York City, for defendants.

Louis J. Lefkowitz, Atty. Gen., of the state of New York, by Thomas N. Dolan, Asst. Atty. Gen., appearing at the request of the Court.

## MEMORANDUM OF NOVEMBER 21, 1972 WITH RESPECT TO MOTION FOR CLASS ACTION

WHITMAN KNAPP, District Judge.

Plaintiff moves for an order declaring that this action be maintained as a class action, pursuant to Fed.R.Civ.P. 23(c)(1).

In this action, initiated in May of 1972, plaintiff seeks money damages and recision on behalf of a class alleged to consist of all persons who purchased any of the publicly offered 200,000 shares of common stock of defendant Southeastern Properties, Inc. ("Southeastern" or the "Company") from underwriters or dealers involved in the public offering, or in the open market thereafter, and who have either retained their stock or sold it at a loss.

The amended complaint alleges that a public offering of 200,000 shares of Southeastern stock, at $5.00 per share, for a total of $1,000,000, was accomplished by false and misleading statements and omissions in a prospectus dated January 31, 1972. Three material misstatements or omissions are alleged:

(1) The prospectus failed to disclose pendency of merger negotiations between Southeastern and Apollo Industries, Inc.

(2) The prospectus failed to disclose that filing requirements of the States of New York and New Jersey had not been complied with, as a result of which the securities sold were not freely tradeable.

(3) The assets in the Southeastern financial statements were artifically inflated.

Violations are alleged of Sections 11, 12(2), and 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, Sections 352–c and 352–e of the New York General Business Law, McKinney's Consol.Laws, c. 20 and common law princlpcles. Jurisdiction is claimed to arise under Section 22 of the 1933 Act and Section 27 of the 1934 Act, as well as under the principles of pendent jurisdiction.

Plaintiff asserts that this action meets all the requirements of Rule 23(a) and (b) (3) and should therefore be maintained as a class action.

Defendant Southeastern opposes the motion on two principal grounds. Southeastern states that it is taking steps to effect an offer of complete recission, and that a recission offer in a securities fraud class action renders the proceeding moot. In addition, Southeastern contends that the pendency of a proceeding by the Attorney General of the State of New York provides a ground for ordering a stay of the present action.

The Court rejects the Southeastern's first contention in that it finds that no firm offer of recission has been made. The second contention, however, presents a serious question as to whether this class action or the proceeding initiated by the New York Attorney General is the superior method for the fair and efficient adjudication of the controversy. *Cf.* Eisen v. Carlisle & Jacquelin (2d Cir. 1968) 391 F.2d 555, 567.

In March 1972, the New York Attorney General's office apparently first informed Southeastern of its dissatisfaction with the filings made under the Blue Sky laws of New York. On September 12, 1972, the Attorney General obtained an order in the Supreme Court of New York pursuant to Article 23–A of the New York General Business Law (The Martin Act) which directs that certain parties assertedly connected with Southeastern's offering appear on October 13, 1972 for examination by the Attorney General's staff, and which enjoins any sale or transfer of Southeastern securities and any disposition of

proceeds derived from the sale of such securities.

Plaintiff questions the adequacy of the Attorney General's proceeding as a vehicle for protecting the rights of the class he aspires to represent. He points out, among other things, that Southeastern has indicated an intention to challenge the Attorney General's jurisdiction.

The record now before the Court is inadequate to resolve the question thus presented.

The matter is therefore set down for a further hearing on Tuesday, December 12, 1972, at 4:00 P.M. in Room 36, for the purpose of resolving the question whether this action should be determined a class action, in light of the pendency of the Attorney General's proceeding. The parties are directed to invite a representative from the New York Attorney General's office to attend the hearing to aid the Court in its determination. If the day and hour above specified should prove inconvenient to the Attorney General, the parties should so advise the Court.

So ordered.

## MEMORANDUM OF APRIL 4, 1974 DISMISSING COMPLAINT AND DENYING COUNSEL FEES

Motions to dismiss by the various defendants and applications for counsel fees and costs by plaintiff's attorney and by defendant Southeastern Properties, Inc. are pending. The case is dismissed, and counsel fees and costs are denied as to all parties.

The relevant facts are as follows: On March 17, 1972 defendant Southeastern Properties, Inc. first publicly offered its stock pursuant to a prospectus. Shortly thereafter the New York State Attorney General began investigating Southeastern. On May 2, 1972 this action was commenced as a class action on behalf of plaintiff and all persons who purchased any of the publicly offered 200,000 shares of common stock of defendant Southeastern from underwriters or dealers involved in the public offering, or in the open market thereafter, and who have either retained their stock or sold it at a loss. The complaint herein alleged two material misstatements or omissions: (1) the prospectus failed to disclose that Southeastern had failed to comply with the filing requirements of the States of New York and New Jersey as a result of which securities sold were not freely tradeable, and (2) the prospectus failed to disclose the pendency of negotiations between Southeastern and Apollo Industries, Inc. The complaint was later amended to add that the prospectus failed to disclose that the assets reflected in Southeastern's financial statements were artifically inflated.

■■ In late June plaintiff's attorney in this action, Edward Labaton, Esq., first learned of the Attorney General's investigation, and discussed it with Assistant Attorney General Thomas N. Dolan. In September, 1972 the Attorney General commenced a formal action against Southeastern in New York State Supreme Court. On November 21, 1972 this court directed that the plaintiff's motion under Rule 23 be held in abeyance until it could be determined whether the Attorney General's New York Supreme Court action would be adequate to protect the interests of the plaintiff and the class he sought to represent. The Attorney General has now concluded his proceeding. I find it to have been adequate to the purpose stated, and dismiss this action.

In the Attorney General's Supreme Court action, the parties, on December 21, 1972, agreed to a consent injunction which directed Southeastern to offer to pay the public stockholders $5 per share, which was the amount they had paid for the stock, in order to make them whole. After Southeastern had liquidated several of its properties, the Continental Stock Transfer Company, transfer agent for Southeastern, on March 30, 1973, mailed a copy of the tender offer to each

individual business or broker which was an owner of record of Southeastern shares on December 21, 1972.

In an affidavit sworn to on July 12, 1973 and filed in this action Arnold I. Burns, Esq., attorney for defendant Southeastern, stated:

"I am pleased to report to this court that 193,500 shares out of the total of 200,000 of Southeastern held by the public were tendered pursuant to the March 30, 1973 offer. This represents a 96.75% response on the part of the shareholders to the offer. To the date of this affidavit, the company has disbursed to the shareholders a total of $804,250 and anticipates disbursing an additional $163,250 when the administration of the tender offer is concluded."

Assistant Attorney General Dolan has on April 3, 1974, reported to me that Southeastern has complied with the essential provisions of its tender offer and that the Attorney General's action has basically been concluded. Southeastern has now disbursed approximately $904,000, and is holding an additional $63,750 subject to the resolution of certain legal problems. As to the approximately 3% of the stockholders who did not respond initially to the tender offer, the issue has been raised, at the hearing before me on July 31, 1973, as to whether such stockholders received adequate notice of the offer. The Attorney General has assured me that all reasonable steps were taken to contact all persons who might have an interest. Thus, in total, almost 97% of the tender offer has been accepted, and over 90% has been paid out. Further, the Attorney General has assured me that Southeastern has established to his satisfaction its good-faith intention of complying completely with the terms of its tender offer to the full extent possible.

A word might be added with respect to the plaintiff's allegations that in various ways the Attorney General's action was less effective than this action.

Plaintiff's counsel has argued that interest charges were not available in the Attorney General's action and there were other incidental benefits available in this action that were not available to the Attorney General. Such possibilities were thoroughly canvassed in recorded argument before me, and I find that, in total, they do not justify continuing this litigation. The case is dismissed.

While both plaintiff's attorney and defendant Southeastern have applied to this court for attorneys' fees and costs, the only real issue before the court is whether such costs should be awarded to plaintiff's counsel. Defendant Southeastern has charged that plaintiff has unduly harassed it, but such argument appears invalid from the record before the court and thus provides no basis for awarding defendant costs.

As to plaintiff's application for counsel fees, I find the following to be the determinative facts:

(a) The Attorney General's investigation was instituted prior to any action by plaintiff or his counsel and its initiation was in no way influenced by them.

(b) This action was initiated by plaintiff without knowledge—and independently—of the Attorney General's investigation.

(c) The Attorney General's action grew out of his own investigation and its initiation was in no way induced by any activity by plaintiff or his counsel.

(d) While the pendency of this action may have made the defendant Southeastern more amenable to settle with the Attorney General, I am not persuaded that plaintiff or his attorney was of any direct assistance to the Attorney General.

Upon those findings, I conclude that no award to plaintiff for counsel fees is warranted. Cf. Fleischmann Distilling Corp. v. Maier Brewing Co. (1967) 386 U.S. 714, 87 S.Ct. 56, 17 L. Ed.2d 51; Mills v. Electric Auto-Lite Co. (1970) 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593; Gilson v. Chock Full

O'Nuts Corp. (2d Cir. 1964) 331 F.2d 107; Blau v. Rayette-Faberge, Inc. (2d Cir. 1968) 389 F.2d 469; Grace v. Ludwig (2d Cir. 1973) 484 F.2d 1262, cert. denied 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110; City of Detroit v. Grinnell Corporation (2d Cir. March 13, 1974) 495 F.2d 448.

So ordered.