506 F.2d 631
 Fed. Sec. L. Rep. P 94,857
Stuart D. WECHSLER, on behalf of himself and all others
similarly situated, Plaintiff-Appellant-Appellee,
v.
SOUTHEASTERN PROPERTIES, INC., Defendant-Appellee-Appellant,
Monarch Funding Corp., et al., Defendants-Appellees.
 Nos. 151 and 252, Dockets 74-1596 and 74-1655.
 United States Court of Appeals, Second Circuit.
 Argued Oct. 4, 1974.
Decided Nov. 4, 1974.
 
 Edward Labaton, New York City (Douglas A. Cooper, Shatzkin & Cooper, New York City, of counsel), for plaintiff-appellant-appellee.
 Arnold I. Burns, New York City (John L. Amabile, Carl G. Bartholomaus, Schwartz, Burns, Lesser & Jacoby, New York City, of counsel), for defendant-appellee southeastern Properties, Inc.
 Marvin Luboff, New York City (Kane, Kessler, Proujansky, Preiss & Permutt, P.C., New York City, of counsel), for defendant-appellee Monarch Funding Corp.
 Charles J. Acker, New York City (Allan I. Kornblau, Hart & Hume, New York City, of counsel), for defendants-appellees James Henry and Henry, McCord, Forrester & Richardson.
 Howard J. Goldstein, New York City, for defendant-appellee Schneider & Baratta.
 Before HAYS, ANDERSON and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Stuart D. Wechsler appeals from a district court opinion and order dated April 4, 1974, 63 F.R.D. 13, denying his application for attorney's fees and costs in a securities fraud action after it had been mooted by the New York State Attorney General's settlement of an independent action which the Attorney General had instituted as the result of his own earlier investigation into the same conduct.[1] The central question raised by this appeal is whether the district court erred in finding that plaintiff's counsel was not of any direct assistance in bringing about the settlement. We hold that there was no error and affirm. Upon a cross-appeal by Southeastern Properties, Inc. ('Southeastern') we also affirm the court's denial of Southeastern's application for litigation expenses and costs.
 
 
 2
 On March 17, 1972, Southeastern made a public offering of a new issue of 200,000 shares of its stock pursuant to a prospectus after registration of the issue with the Securities and Exchange Commission. A few days later the New York State Attorney General commenced an investigation of the public offering to determine whether the sale of Southeastern stock in New York had violated that state's Blue Sky laws[2] and ordered trading in the stock suspended, suggesting that the issue should be rescinded. On May 2, 1972, this action was commenced as a class action on behalf of Wechsler and all persons who purchased any of the publicly offered shares of stock from underwriters or dealers involved in the offering, or in the open market thereafter, and who had either retained their stock or sold it at a loss.[3] Invoking federal jurisdiction under 22(b) of the Securities Act of 1933 and 27 of the Exchange Act of 1934, the complaint alleged two material misstatements or omissions: (1) the prospectus did not disclose that Southeastern had failed to comply with the filing requirements of the states of New York and New Jersey, as a result of which the shares were not freely tradeable there, and (2) the prospectus did not disclose the pendency of merger negotiations between Southeastern and Apollo Industries, Inc. The complaint was later amended to add that the prospectus had failed to disclose that the assets reflected in Southeastern's financial statements were artificially inflated. Wechsler requested relief in the form of rescission or damages.
 
 
 3
 Wechsler's attorney commenced this lawsuit after learning of the Attorney General's investigation into the transactions forming the basis of the suit (the Attorney General's investigation is mentioned in Wechsler's complaint) but did not discuss it with the Attorney General's office until late June 1972. In September 1972 the Attorney General commenced a formal action against Southeastern in New York State Supreme Court alleging violations of certain provisions of Article 23-A of the New York General Business Law and requesting rescission of the public offering.[4] On November 21, 1972, the district court directed that Wechsler's motion for a class action determination pursuant to Rule 23, F.R.Civ.P., be held in abeyance until it could be determined whether the Attorney General's state court action would be adequate to protect the interests of Wechsler and the class which he sought to represent.
 
 
 4
 On December 21, 1972, the parties to the Attorney General's state court action agreed to a consent injunction which directed Southeastern to make a tender offer to repurchase the publicly offered stock at the price at which it was first offered, $5 per share. After Southeastern had liquidated several of its properties, its transfer agent, on March 30, 1973, mailed a copy of the tender offer to each individual or broker that was an owner of record of Southeastern shares on December 21, 1972. As of April 3, 1974, almost 97% Of the shares originally sold, including all but 10 shares held by Wechsler, had been tendered and approximately 90% ($904,000) of the funds raised in the original offering had been returned. On the same date Assistant Attorney General Thomas N. Dolan reported to the district court that Southeastern had complied with the essential provisions of the tender offer and that the Attorney General's action had basically been concluded.
 
 
 5
 In the meantime, on July 31, 1973, a hearing was held by the district court upon Wechsler's application for attorney's fees and Southeastern's motion to dismiss the action and its application for fees and costs. Decision was reserved on all of the motions and applications, pending this Court's decision in Grace v. Ludwig, 484 F.2d 1262 (2d Cir. 1973), cert. denied, 416 U.S. 905, 94 S.Ct. 1610, 40 L.Ed.2d 110 (1974), then sub judice and later handed down on September 12, 1973, which the district court thought might be of help in resolving the attorney's fees issue. In an opinion dated April 4, 1974, Judge Knapp concluded that the tender offer and rescission negotiated by the Attorney General had adequately protected the interests of Wechsler and the proposed class, thus in effect mooting Wechsler's suit and rendering further prosecution of it unnecessary. He dismissed the action and denied all applications for fees and costs, finding that neither plaintiff nor his attorney was of any direct assistance to the Attorney General.[5] He further found no merit in Southeastern's argument that it was entitled to attorney's fees and costs because of alleged undue harassment by plaintiff.
 
 Discussion
 
 6
 Under the 'private attorney general' doctrine an award by the court of counsel fees for services that have produced a monetary or other benefit to a corporation or class is favored as a means of encouraging private enforcement of the securities laws for the protection of the public investor. See, e.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 389-397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); J.I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Grace v. Ludwig, supra; Rosenblatt v. Northwest Airlines, Inc., 435 F.2d 1121, 1124 (2d Cir. 1970). An essential condition precedent to the award, however, is a showing that the attorney's services were a competent producing cause of the supposed benefit conferred. Cf. Mills v. Electric Auto-Lite Co., supra, 396 U.S. at 389-397, 90 S.Ct. 616; Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); White v. Auerbach, 500 F.2d 822 at 829 (2d Cir. 1974); Blau v. Rayette-Faberge, Inc., 389 F.2d 469 (2d Cir. 1968); Gilson v. Chock Full O'Nuts Corp., 331 F.2d 107 (2d Cir. 1964). Where, as often occurs, the private action follows upon the coattails of a government suit or investigation which has provided the basis for the claim, it has been suggested that the court's inquiry be directed at whether the services rendered played any part in achieving a successful result rather than at the encouragement of the litigation by increasing the fee through the use of a contingency factor. See Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp., 487 F.2d 161, 168 (3d Cir. 1973). Since the private investorplaintiff usually seeks relief not available to the government in the form of substantial damages, see West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710 (S.D.N.Y.1970), affd., 440 F.2d 1079 (2d Cir.), cert. denied sub nom., Cotler Drugs, Inc. v. Chas. Pfizer & Co., 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971), which, if awarded, will serve as an additional deterrent, an award of counsel fees to the 'coattail' plaintiff is still recognized, the principal objection being the excessiveness of the award rather than its allowance by the court. See, e.g., City of Detroit v. Grinnell Corp., 495 F.2d 448, 468-474 (2d Cir. 1974). However, the mere institution of a stockholder's action does not guarantee that the plaintiff will be awarded attorney's fees upon his suit being mooted by the successful prosecution or settlement of some other action. Causation must still be shown and the burden of establishing it remains with the plaintiff. Chrysler Corp. v. Dann, 223 A.2d 384, 386-387 (Del.1966).
 
 
 7
 In the present case Wechsler, in an effort to establish a causal connection between his attorney's efforts and the rescission negotiated by the Attorney General, submitted affidavits and exhibits tending to show that his action was independent of the Attorney General's action, was meritorious in its own right, and was prosecuted diligently. He contends that these factors lead to the inevitable conclusion that the maintenance of his action contributed to the pressure on the defendants to settle with the Attorney General. He finds support for his contention in the fact that Judge Knapp, although finding that Wechsler was not of any direct assistance to the Attorney General, simultaneously stated that 'the pendency of this (Wechsler's) action may have made the defendant Southeastern more amenable to settle with the Attorney General'. However, Wechsler did not offer to submit any direct or circumstantial evidence (such as affidavits from the Attorney General's office or from the defendants) tending to show that he or the pendency of his action materially assisted the Attorney General's investigation and prosecution of the state court action or added any pressure leading to settlement. Indeed, at oral argument Wechsler's counsel frankly conceded that if the matter were remanded for a hearing he knew of no further evidence that could be offered to establish a causal connection between Wechsler's suit and the rescission offer. Thus this case is quite different from Gilson v. Chock Full O'Nuts Corp., supra, where the derivative stockholder's attorney rendered valuable services that led the corporation to institute the 16(b) actions which were successfully settled.
 
 
 8
 Wholly aside from Wechsler's failure to prove that his attorney's services played any part in obtaining the settlement, there is countervailing evidence in the record to the effect that the Attorney General's proceeding was completely responsible for the result achieved. In the first place, the Attorney General's investigation had not only predated but inspired Wechsler's suit. The Attorney General, Furthermore, had the personnel, legal authority and statutory basis to prosecute his action and secure the same relief sought by Wechsler. Lastly the available evidence reveals that the Attorney General vigorously pursued his investigation without benefit of Wechsler's suit and achieved the settlement shortly after the Attorney General's own suit was initiated. Under all of these circumstances, notwithstanding the ambivalent finding of the district court on the subject, it is clear from reading Judge Knapp's opinion as a whole, to which great weight should be accorded, cf. City of Detroit v. Grinnell Corp., supra, 495 F.2d at 454-455; Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971), and from our review of the record, that Wechsler failed to prove any contribution toward achieving the settlement.[6]
 
 
 9
 In the absence of proof that Wechsler's suit was a competent producing cause of the settlement we do not reach the more difficult question of whether Grace v. Ludwig, supra, would in any event control the result here or whether it is distinguishable on legally significant grounds (e.g., that the SEC's administrative proceeding in Grace was mandated by 17(b) of the Investment Company Act whereas the New York State Attorney General's investigation and institution of suit for violation of Article 23-A of the New York General Business Law was discretionary, N.Y.Gen.Bus.Law 352 and 353).[7]
 
 
 10
 The district court's order denying Southeastern's application for litigation expenses and costs must likewise be affirmed in the absence of evidence of vexatious conduct of the type presented in Stolberg v. Members of the Board of Trustees, 474 F.2d 485 (2d Cir. 1973).
 
 
 
 [1]
 Wechsler's action was dismissed in the same opinion and order, but he does not appeal from that dismissal
 
 
 [2]
 N.Y.Gen.Bus.Law, Art. 23-A, McKinney's Consol.Laws, c. 20
 
 
 [3]
 Wechsler alleged violations of 11, 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. 77k, 77l(2) & 77q(a), 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), Rule 10b-5, 17 C.F.R. 240.10b-5, N.Y.Gen.Bus.Law 352-c & 352-e, and common law principles
 
 
 [4]
 The Attorney General alleged that Southeastern stock had been sold without filing as required by N.Y.Gen.Bus.Law 352-e and that the prospectus contained material misstatements or omissions in violation of N.Y.Gen.Bus.Law 352-c
 Section 352-e provides in part:
 '1. (a) It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, except companies organized under the pursuant to the provisions of articles nine or twelve of the public housing law or chapter eight hundred forty-five of the laws of nineteen hundred forty-two, to make or take part in a public offering or sale in or from the state of New York of securities constituted of participation interests or investments in real estate, mortgages or leases, including stocks, bonds, debentures, evidences of interest or indebtedness, limited partnership interests or other security or securities as defined in section three hundred fifty-two of this article, when such securities consist primarily of participation interests or investments in one or more real estate ventures, including cooperative interests in realty, unless and until there shall have been filed with the department of law, prior to such offering, a written statement or statements, to be known as an 'offering statement' or 'prospectus' concerning the contemplated offering which shall contain the information and representations required by paragraph (b) of this subdivision unless the security offering is exempted hereunder or under section three hundred fifty-nine-f, subdivision two, of this article by rule or action of the attorney general.'
 Section 352-c provides in part:
 '1. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:
 (a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale;
 (b) Any promise or representation as to the future which is beyond reasonable expectation or unwarranted by existing circumstances;
 (c) Any representation or statement which is false, where the person who made such representation or statement: (i) knew the truth; or (ii) with reasonable effort could have known the truth; or (iii) made no reasonable effort to ascertain the truth; or (iv) did not have knowledge concerning the representation or statement made; where engaged in to induce or promote the issuance, distribution, exchange, sale, negotiation or purchase within or from this state of any securities or commodities, as defined in section three hundred fifty-two of this article, regardless of whether issuance, distribution, exchange, sale, negotiation or purchase resulted.'
 
 
 [5]
 The district court's findings on this issue are somewhat equivocal. At one point it is conceded that Wechsler's action 'may have made the defendant Southeastern more amenable to settle with the Attorney General.' However, it is clear from reading the whole opinion and from a statement immediately following the quoted one to the effect that neither Wechsler nor his attorney 'was of any direct assistance to the Attorney General' that the district court based its decision on Wechsler's failure to prove any contribution to achieving the settlement
 
 
 [6]
 Wechsler did not take any serious steps toward pretrial discovery until after the Attorney General had successfully negotiated the settlement. Indeed, most of plaintiff's pretrial discovery was actively undertaken only after dismissal of his suit became imminent
 
 
 [7]
 It is questionable whether Wechsler would be able to recover attorney's fees from Southeastern even if he had been able to prove some causal connection between his efforts and the settlement as there is no evidence that Southeastern was enriched by the whole affair. See Mills v. Electric Auto-Lite Co., supra. No fund was created as a result of the rescission and the only group to benefit were the stockholders of the corporation