**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**UNITED FINANCIAL GROUP, INC.,
et al., Defendants.**

**Civ. No. 72–41.**

United States District Court,
D. Oregon.

Nov. 6, 1975.

Leonard H. Rossen, Allen F. Corotto, Edward V. O'Gara, Jr., San Francisco, Cal., Robert G. Gottlieb, Seattle, Wash., Sidney I. Lezak, U. S. Atty., Jack G. Collins, First Asst. U. S. Atty., D. Or., Portland, Or., for plaintiff.

Ernest Bonyhadi of Rives, Bonyhadi & Drummond, Portland, Or., David L. Cunningham, Theodore W. Phillips of Phillips, Cohn & Greenberg, San Francisco, Cal., O. Yale Lewis, Jr., of Davis, Wright, Todd, Riese & Jones, Seattle, Wash., Thomas H. Carver, Beverly Hills, Cal., Maynard Garrison, San Francisco, Cal., Garry P. McMurry, McMurry & Nichols, Portland, Or., for defendants.

William E. Tassock, Receiver, Dean D. DeChaine, Miller, Anderson, Nash, Yerke & Wiener, Portland, Or., for receiver.

## OPINION

SKOPIL, District Judge:

I must determine whether attorney's fees and expenses should be awarded from a receivership estate to four sets of attorneys who have represented various parties to three separate actions. These actions arose out of securities fraud committed in the sale of so-called "offshore mutual funds". Because of the complexity of the facts underlying these applications for fees and expenses, the history of the litigation is summarized below.

## THE LITIGATION

The first action,[1] a Federal Rule 23 class action, was filed by John M. Geddes, plaintiff, on October 13, 1971, in the United States District Court for the District of Oregon. This action alleged violations of the antifraud provisions of the federal securities laws.

The second action[2] was filed by the Securities and Exchange Commission in

---

1. *Geddes v. United Financial Group, Inc.*, Civil No. 71–720 (D.Or.) (*Geddes* action).

2. *Securities and Exchange Commission v. United Financial Group, Inc.*, Civil No. 72–41 (D.Or.) (*SEC* action).

the same court on January 17, 1972, seeking an injunction and appointment of a receiver because of alleged securities fraud. This action resulted in a preliminary injunction and the appointment of a receiver, William E. Tassock, on February 16, 1972. The defendants prosecuted an appeal to the Ninth Circuit Court of Appeals, which affirmed the decision of the district court on January 17, 1973. *Securities and Exchange Commission v. United Financial Group, Inc.*, 474 F.2d 354 (9th Cir. 1973).

The third action,[3] a state court class action, was filed on March 10, 1972, by Anton Wenzoski for himself and all others similarly situated, alleging that investors in the schemes promoted by the defendants were defrauded and that the defendants had breached their fiduciary duty to the investors. This action was filed in the California Superior Court for the County of Marin.

The *SEC* action resulted in the entry of a permanent injunction against the defendants by a consent judgment on February 15, 1973. On June 29, 1973, the receivership estate was ordered to be liquidated and distributed as if "the entire estate were in bankruptcy". That liquidation has continued to the present time.

The *Geddes* action proceeded to final judgment in favor of the plaintiff class on September 5, 1973, in the amount of $66,900,000 plus reasonable attorney's fees, to be determined by the court. The *Wenzoski* action likewise proceeded to final judgment in favor of the plaintiff class, which was entered on September 27, 1973. That judgment was in the amount of $74,365,327. The California state court also fixed attorney's fees at $750,000 plus costs of $27,002.97, to be paid on a ten percent pro rata basis from sums distributed through the California court.[4]

## THE FEE APPLICATIONS

Applications for attorney's fees and expenses have been submitted by the following parties: (1) attorneys for the plaintiff class in the *Geddes* action [Theodore W. Phillips, Ernest Bonyhadi, and O. Yale Lewis, Jr.]; (2) attorneys for the plaintiff class in the *Wenzoski* action [Thomas H. Carver and Maynard Garrison]; (3) Garry P. McMurry, attorney for defendants United Financial Group, Inc. (UFG), and Robert W. Pollock in the *SEC* action; and (4) David L. Cunningham, counsel for certain entities in bankruptcy proceedings.[5] The *Geddes* attorneys seek fees for services rendered in both *Geddes* and *SEC*; the *Wenzoski* attorneys apparently now seek fees for services rendered in *Geddes*, *Wenzoski*, and *SEC*;[6] McMurry seeks fees for services rendered in the *SEC* ac-

---

3. *Wenzoski v. Pollock*, Civil No. 62826 (Superior Court, State of California, County of Marin) (*Wenzoski* action).

4. *Wenzoski* counsel have received no payments for these fees and costs. See page 3 of Revised Petition for Attorney's Fees and Costs and Affidavit filed August 25, 1975.

5. Cunningham represented Standard Growth Properties, Inc. and San Francisco-Marin Real Estate Development Corporation in bankruptcy proceedings brought in the United States District Court for the Northern District of California. These proceedings were later transferred to this court. Order Directing Receiver to Request Transfer of Cases filed April 18, 1972.

6. As noted above, the *Wenzoski* attorneys have previously obtained a judgment for fees and costs in that case. At the time that judgment was obtained, the *Wenzoski* attorneys represented to this court that they would not seek in this case to recover for the same efforts. Petition for Attorneys' Fees and Costs (Memorandum and Affidavit) filed August 23, 1973. Now, however, in view of the fact that they have not yet received the fees and costs awarded in *Wenzoski*, these attorneys assert that an award from the receivership estate for their services in *Wenzoski* is appropriate (with any payments received to be credited against that judgment). Revised Petition for Attorney's Fees and Costs and Affidavit filed August 25, 1975.

tion; and Cunningham seeks fees for services rendered in the bankruptcy proceedings and as a member of the receiver's advisory committee. All the attorneys claim that these services conferred a benefit upon the investor class. The fees and expenses requested are summarized below.

### Attorney's Fees Claimed

| Attorney | Hours Claimed | | | | Amount Claimed |
|---|---|---|---|---|---|
| | SEC | Geddes | Wenzoski | Total | |
| Phillips | 437.2 | 1564.4 | | 2001.6(a) | * $1,200,000 + 20% |
| Bonyhadi | 1504.7 | 957.0 | | 2461.7(a) | of excess over |
| Lewis | | | | 641.7(a) | $5,280,682(b) |
| Carver ) | | | | | |
| Garrison) | 1035.0 | 83.0 | 2055.5 | 3173.5(c) | * $1,200,000 or 20% of present gross value (c) |
| McMurry | | | | $40/hr. | $19,486.79(d) |
| Cunningham | | | | $50/hr. | $35,350 less $5,000 retainer (e) |

* Although the petitions filed are unclear, the *Geddes* and *Wenzoski* attorneys are probably seeking a total award among themselves in the amounts claimed.

### Expenses Claimed

| | | |
|---|---|---|
| Phillips | $15,203.99(f) | |
| Bonyhadi | 1,648.23(f) | |
| Lewis | 209.55(f) | |
| Geddes | 2,881.00(f) | |
| Carver (*SEC* and *Geddes*) | 6,905.56(c) | |
| Cunningham | 2,226.19(e) | |
| Subtotal | | $29,074.52 |
| Carver (*Wenzoski*) | | 23,599.49(c) |
| Total | | $52,674.01 |

(a) Supplement to Petition for Fees by Counsel for Geddes, et al. filed August 11, 1975.
(b) Supplemental Memorandum for Hearing on Petitions for Fees by Geddes' counsel filed July 28, 1975.
(c) Revised Petition for Attorney's Fees and Costs and Affidavit filed August 25, 1975.
(d) Second Renewal Petition for Payment of Defendants' Attorneys' Fees filed July 23, 1975.
(e) Petition for Attorney's Fees and Expenses filed August 20, 1973.
(f) Summaries of Costs and Disbursements of Geddes Plaintiffs' Counsel and John M. Geddes filed August 15, 1973, and Supplement to Petition for Payment of Attorneys' Fees filed June 11, 1975.

---

### THE RECEIVERSHIP ESTATE

The Receiver's Report filed with the court in July, 1975, shows that the receivership estate has total assets of $5,280,682. The receiver states that this figure is "conservative" and will be increased by interest, rental, and other income and by the proceeds of certain contingent special items and matters in litigation estimated at $4,131,294. He further notes that considerable time will be required to complete liquidation of the estate.

Claims allowed or approved by the receiver against this fund total $34,216,-208 as of July 15, 1975, of which $33,-422,745 are public investor claims.

The receiver has been paid compensation of $164,500 for services to January 1, 1975. He has not yet been paid for services rendered since that date. Fees and expenses paid and/or accrued by attorneys for the receiver total $356,052.-26. Substantial additional administration expenses have been incurred in retaining accountants, appraisers, and investigators for the receivership.

The receiver has indicated that as of October 16, 1975, the estate can safely disburse the sum of $200,000 for the fees and expenses requested in the applications now under consideration. The estate now contains $787,000 in cash, of which $40,000 is restricted because of litigation and other reasons. A disbursement of $200,000 at the present time would leave the estate approximately $547,000, which the receiver feels is necessary as a cushion to prevent possible foreclosures.

### THE APPLICABLE LAW

The United States Supreme Court has recognized that the award of attorney's fees may be appropriate, even though not expressly authorized by statute, when a suit has been maintained which has benefitted others. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). As stated in *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), a federal judge may award fees in

> "cases in which the plaintiff's successful litigation confers 'a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.' "

The determination of fees to be awarded is, of course, largely within the discretion of the trial court. *Monaghan v. Hill,* 140 F.2d 31, 34 (9th Cir. 1944). This discretion is, however, predicated on the assumption that careful consideration is given to all evidence of the value of the attorney's services in the light of the factors relevant to a determination. These factors have been ably set forth in *In re Gypsum Cases,* 386 F. Supp. 959, 962 (N.D.Cal.1974), as follows:

> "(1) the time and labor properly employed by the attorneys in the processing of these cases; (2) the quality of the services rendered; (3) the scope of the activity and conspiracy under attack; (4) the financial risk involved and contingent nature of the action undertaken; (5) the magnitude, complexity and novelty of the issues involved; (6) the true measure of the beneficial results achieved, including the prophylactic effect thereof; and (7) the degree to which, if any, plaintiff's efforts were supported by prior governmental action."

I have relied upon these factors rather than upon any percentage formula in determining the fees to be awarded.

### FEES AWARDED

A number of considerations have been particularly persuasive in my determination of appropriate fees. Perhaps foremost is the degree of governmental involvement in bringing these proceedings to a successful conclusion. The receivership, which has been responsible for the collection of most of the assets now available for distribution, resulted from an action brought by the Securities and Exchange Commission (Commission). The Commission's investigation began in July, 1971, before either *Geddes* or *Wenzoski* was filed. While the Commission acknowledges that the efforts of

the *Geddes* counsel were helpful to its case, the *SEC* action was filed primarily on the basis of the Commission's own investigation. Moreover, the ruling of the Ninth Circuit obtained in the *SEC* action was instrumental in facilitating judgments in the *Geddes* and *Wenzoski* actions. Much of the time expended on *Geddes* and *Wenzoski* necessarily duplicated the Commission's efforts in the *SEC* action. Thus, the benefits conferred by the attorneys upon the investor class are substantially lessened because of governmental involvement. The significance of such involvement has been stressed in *Wechsler v. Southeastern Properties, Inc.*, 506 F.2d 631, 635 (2d Cir. 1974):

> "Under the 'private attorney general' doctrine an award by the court of counsel fees for services that have produced a monetary or other benefit to a corporation or class is favored as a means of encouraging private enforcement of the securities laws for the protection of the public investor. See, e. g., *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Grace v. Ludwig, supra; Rosenblatt v. Northwest Airlines, Inc.*, 435 F.2d 1121, 1124 (2d Cir. 1970). An essential condition precedent to the award, however, is a showing that the attorney's services were a competent producing cause of the supposed benefit conferred. Cf. *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 389–397, 90 S.Ct. 616; *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *White v. Auerbach,* 500 F.2d 822 at 829 (2d Cir. 1974); *Blau v. Rayette-Faberge, Inc.,* 389 F.2d 469 (2d Cir. 1968); *Gilson v. Chock Full O'Nuts Corp.,* 331 F.2d 107 (2d Cir. 1964). Where, as often occurs, the private action follows upon the coattails of a government suit or investigation which has provided the basis for the claim, it has been suggested that the court's inquiry be directed at whether the services rendered played any part in achieving a successful result rather than at the encouragement of the litigation by increasing the fee through the use of a contingency factor. See *Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.,* 487 F.2d 161, 168 (3d Cir. 1973). Since the private investor-plaintiff usually seeks relief not available to the government in the form of substantial damages, see *West Virginia v. Chas. Pfizer & Co.,* 314 F.Supp. 710 (S.D.N.Y.1970), affd., 440 F.2d 1079 (2d Cir.), cert. denied sub nom., *Cotler Drugs, Inc. v. Chas. Pfizer & Co.,* 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971), which, if awarded, will serve as an additional deterrent, an award of counsel fees to the 'coattail' plaintiff is still recognized, the principal objection being the excessiveness of the award rather than its allowance by the court. See, e. g., *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 468–474 (2d Cir. 1974)."

A second important consideration is the comparatively small return which public investors can expect from the receivership estate. Claims already approved exceed $33,000,000, while the estate now contains only $5,000,000 in assets. I am in accord with the opinion expressed in *In re Gypsum Cases*, 386 F. Supp. 959, 962 (N.D.Cal.1974), that

> "awards, though they shall not be niggardly, must be reasonable attorneys' fees, no more and no less. Otherwise the recompense would overshadow the result achieved and diminish the settlement fund to the point where the individual class member obtains only a token recovery."

The fees and expenses which I have awarded, as indicated below, total $320,-

000. Compensation to the receiver and attorneys retained by him already totals $520,000. Final administrative expenses and attorney's fees awarded can thus be expected to approach $1,000,000. This figure should not be further increased at the expense of public investors.

An evidentiary hearing on the matter of fees has been held. I have carefully reviewed the many documents submitted by the attorneys in support of their fee applications and make these awards only after considering those documents, the full record of this litigation, and the recommendations of the receiver, the Commission, and the judge who tried the *SEC* and *Geddes* actions. I have found the recommendations of the Commission to be particularly valuable and have given them great weight in my determination. See *Securities and Exchange Commission v. Fifth Avenue Coach Lines, Inc.*, 364 F.Supp. 1220, 1222 (S.D.N.Y.1973).

■ The fees awarded have been limited to services rendered and expenses incurred to date. The future efforts of particular counsel in recovering specific assets which are now contingent may justify additional awards at a later time, but the extent of benefits conferred by such counsel upon the investor class should be determined only after the assets have been recovered.

### Geddes Counsel [Phillips, Bonyhadi, and Lewis]

■ Although the value of the services rendered by them is lessened somewhat by the efforts of the Commission, the *Geddes* attorneys have clearly conferred a substantial benefit upon the investor class. Analysis of their time records to determine which activities were beneficial, and to what extent, would require a monumental effort and likely produce no more just a result than use of a simpler formula. I have concluded that each attorney should be compensated for his services based on an hourly rate of $40 applied to the total hours. The fee awards to the *Geddes* attorneys are as follows:

| | |
|---|---|
| Theodore W. Phillips (2001.6 hours) | $80,064.00 |
| Ernest Bonyhadi (2461.7 hours) | $98,468.00 |
| O. Yale Lewis, Jr. (641.7 hours) | $25,668.00 |

Each attorney is also to be reimbursed for expenses incurred in the following amounts:

| | |
|---|---|
| Theodore W. Phillips | $15,203.99 |
| Ernest Bonyhadi | $ 1,648.23 |
| O. Yale Lewis, Jr. | $ 209.55 |

The plaintiff in the *Geddes* action, John M. Geddes, shall be reimbursed for his expenses in the sum of $2,881.00.

### Wenzoski Counsel [Carver, Garrison]

■ The value of the services rendered by the *Wenzoski* attorneys is much less clear. These attorneys were aware at the time the *Wenzoski* action was filed that both the *SEC* and the *Geddes* actions had already been filed.

Furthermore, the *Wenzoski* attorneys have already obtained a judgment for fees and costs in that case and have previously represented to this court that they would not seek the same fees and costs in this case. I find that no award should be made for fees or expenses in that case.

I do find, however, that an award for the efforts of the *Wenzoski* attorneys in the *Geddes* and *SEC* actions is appropriate. The time expended on those cases by Thomas H. Carver and Maynard Garrison totals 1118.0 hours. Because of the considerations cited above with respect to the *Geddes* attorneys, the award has been calculated on the basis of $40 per hour, for a total of $44,720.00. The *Wenzoski* attorneys will also receive

reimbursement of $6,905.56 for expenses incurred in *Geddes* and *SEC*.

### Defendants' Counsel [McMurry]

 McMurry has requested attorney's fees for his efforts from February 17, 1972, through February 13, 1973, in connection with the *SEC* action only. He quite forthrightly concedes that he conferred no benefit upon the investor class by representing the defendants in the *Geddes* action:

> "This Petition does not include request for payment for the several hundred hours expended and travel expenses incurred on behalf of the Corporate Defendants in the *Geddes* case. No Petition has been made or will be made for fees and expenses incurred in that case as in Petitioner's opinion, no benefit has been conferred upon the estate by the attorneys representing the civil litigants in the *Geddes* lawsuit following judgment in this *SEC* case." Second Renewal Petition for Payment of Defendants' Attorneys' Fees filed July 23, 1975.

McMurry received a retainer of $12,500, which he was allowed by the court to keep and offset against his fees.[7] He has made application for a net balance of $19,486.79, computed on an hourly rate of $40.

I am aware that the award of attorney's fees to counsel for the corporate defendants is somewhat problematical in view of the fact that they were unsuccessful in resisting the receivership and injunction sought in the *SEC* action. See, e. g., *Securities and Exchange Commission v. Alan F. Hughes, Inc.*, 481 F.2d 401 (2d Cir. 1973), cert. denied, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973), and *Securities and Exchange Commission v. Capital Counsellors, Inc.*, 378 F.Supp. 224 (S.D.N.Y.1974), aff'd, 512, 654 (2d Cir. 1975). The Second Circuit notes in the latter case that ordinarily the services of an attorney employed by the defendant to represent him in a receivership proceeding are solely for his benefit and are not to be paid for out of the receivership estate. But the court further acknowledges that the test to be applied is whether "some material benefit accrued to an estate in receivership through the services of those not entrusted with its administration". 512 F.2d at 658.

In this particular case, I find that McMurry's efforts have conferred some material benefit which should be compensated. Without his assistance in reaching a settlement in the *SEC* and *Geddes* actions, the estate would have been depleted substantially by unnecessary trials. In this sense, he has furthered the interests of the public investors. The sum requested of $19,486.79 is a reasonable fee for his contribution.

### David L. Cunningham

 Cunningham has devoted, a total of 707 hours to the bankruptcy proceedings in California and to the receiver's advisory committee.[8] I find that the award of fees at the rate of $40 per hour is appropriate for him, as well as for the *Geddes* and *Wenzoski* attorneys, for the reasons set forth above. He is awarded fees in the amount of $28,280.-00, less the $5,000 retainer previously received, for a net award of $23,280.00. His expenses of $2,226.19 shall also be reimbursed.

The payment of the awards set forth above must not be permitted to jeopardize the successful continuation and completion of the receivership. The receiver has indicated that the sum of

---

7. Recommended Order of Special Master and Order on Motion for Payment of Attorneys' Fees to Defendants' Counsel filed May 16, 1972.

8. Of the 707 hours, 422 represent hours served as a member of the receiver's advisory committee.

$200,000 can safely be made available at the present time in partial payment of the awards. That amount shall be distributed proportionately as follows:

| Attorney | Fees Awarded | Expenses Awarded | Total Award | Partial Payment |
|---|---|---|---|---|
| Phillips | $80,064.00 | $15,203.99 | $ 95,267.99 | $ 59,401.18 |
| Bonyhadi | 98,468.00 | 1,648.23 | 100,116.23 | 62,424.14 |
| Lewis | 25,668.00 | 209.55 | 25,877.55 | 16,135.08 |
| Geddes | | 2,881.00 | 2,881.00 | 1,796.35 |
| Carver ) | | | | |
| Garrison) | 44,720.00 | 6,905.56 | 51,625.56 | 32,189.39 |
| McMurry | 19,486.79 | | 19,486.79 | 12,150.33 |
| Cunningham | 23,280.00 | 2,226.19 | 25,506.19 | 15,903.53 |
| Total | | | $320,761.31 | $200,000.00 |

The receiver shall notify the court as further sums become available for distribution. These sums shall also be distributed proportionately until all awards have been paid in full.

This Opinion shall constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).