ACADEMIC COMPUTER SYSTEMS, INC., on behalf of it and all other persons similarly situated, Plaintiff,

v.

Stanley H. YARMUTH et al., Defendants.

No. 73 CIV. 3930(MP).

United States District Court,
S. D. New York.

April 27, 1976.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff by Stephen D. Oestreich, and Philip Jones, New York City, of counsel.

Singer, Hutner, Levine & Seeman, New York City, for defendants other than First National City Bank by Jay W. Seeman, New York City, of counsel.

Shearman & Sterling, New York City, for defendant First National City Bank by Paul A. Merolla, New York City, of counsel.

POLLACK, District Judge.

This is an application for allowance of legal fees and disbursements sought on behalf of attorneys who represented a class of owners of debentures issued by National Industries, Inc. That class sued the corporation and its directors and the Trustee under the trust indenture to enjoin the defendants from soliciting the consents of the bondholders to the elimination of a restrictive provision in the trust indenture and from using the consents already obtained from the solicitation. For the reasons and findings given hereafter the application is in all respects denied.

The complaint was predicated on alleged false, misleading and insufficient disclosure of material matters in the communication issued by the company in connection with the solicitation of the bondholders' consent. The complaint claimed violations of § 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n(a), and Rule 14a–9, 17 C.F.R. 240.14a–9, promulgated in pursuance thereof. There was no trial of the action or any disposition of the claims on the merits. After the solicitation had been outstanding for several months, during which time the requisite consents had not been obtained, National announced the withdrawal of the consent solicitation. The parties to the action thereupon executed a stipulation of agreement dismissing the action pursuant to which the Court ordered its dismissal in March 1974. The suit had become moot.

In October 1974, approximately seven months after the termination of the solici-

tation referred to, National made an exchange offer to its bondholders and Series B preferred stockholders. Some, but not all the bondholders and some but not all of the preferred stockholders accepted the exchange. No amendment of the trust indenture was required for the promulgation of the exchange offer.

The attorneys now seek a fee of $75,000 plus $696.44 in disbursements essentially on the ground that the litigation they conducted conferred "a substantial benefit on" the corporation and/or the class of bondholders. *See, Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393–4, 90 S.Ct. 616, 626, 24 L.Ed.2d 593, 607 (1970). The attorneys contend that the lawsuit influenced the decision to cease obtaining consents from the debenture holders and to terminate the solicitation of the modification of the indenture agreement. They further contend that the voluntary exchange offer referred to was made in contemplation of the withdrawal of the solicitation to amend the indenture and thus was due to plaintiff's efforts. The claimants point out that the debenture holders did not lose the security afforded by the indenture which the defendants allegedly attempted to remove and which the plaintiff's lawsuit sought to protect. They contend further that the burden of proof is on the defendants to show no causal connection between the lawsuit and the action of the defendants in complying with the relief sought, thereby rendering the action moot.

The defendants, on the other hand, contend that the plaintiff's litigation in no way constituted a factor in National's decision to withdraw the solicitation. They point to the fact that the indenture required approval of two-thirds in amount of the bondholders for the elimination of the restrictions. Between June when the solicitation commenced and mid-September when this action was started National received an affirmative response from approximately 48% of the bondholders. The institution of the action did not change the attitude of National's management towards the solicitation. It continued to actively seek affirmative responses in the effort to successfully conclude the solicitation. No effort was made by plaintiff, by way of application for a preliminary injunction, to halt the solicitation of consents. Nevertheless, by March 1974 National was able to obtain only about 56% (in amount) of the bondholders to consent. This left National almost 11% "short" of the necessary consents to amend the indenture. Parenthetically, it may be observed that the plaintiff claimed that 100% in amount of the bondholders had to consent to validate any such amendment as that sought.

As evidence that there was no causal connection between the litigation and the exchange offer made seven months later the defendants point out that the litigation did not attack and could not have attacked any exchange offer since none was being made in the June 1973 solicitation materials. The defendants assert with sufficient probative support by reasonable inferences from the facts that the October 1974 exchange proposal was prompted solely by economic realities that had developed during 1974.

In sum, the defendants contend that they are not indebted for fees to the plaintiff's counsel. They say that fees are being sought from the defendants, who are not the class represented or allegedly benefitted; that in class actions, as with most actions, plaintiff's counsel cannot obtain their fees from the defendants in the absence of some statutory authorization which does not exist here. The defendants say that the plaintiff has not shown the assertion of a meritorious claim in the complaint since the solicitation material complained of was not materially misleading; that plaintiff has not shown that a substantial benefit was created or preserved for the class as a result of successful litigation; that plaintiff's action was not the cause of the withdrawal of the solicitation; and that economic factors and bondholder apathy made futile any further efforts to obtain the necessary number of consents and made unnecessary the need for such approval.

The defendants assert that even if the plaintiffs were able to carry their burden of

proof to the contrary of the foregoing the amount sought by them is grossly unreasonable and the maximum that the plaintiffs could contend for would be the reasonable time charges for the time reasonably spent in the prosecution of the action itself. Analyzing the proofs submitted by the plaintiff, the defendants say that upwards of 50% of the time spent by plaintiff's counsel was in pursuit of their fees which should not be considered at all; that of the remainder, 20% was for work on a motion never made, and that a number of hours were spent subsequent to the dismissal of this action on preparation of an action which was never even instituted.

The Supreme Court has reaffirmed the "American Rule" that absent a statute permitting the awarding of attorneys' fees no such fees shall be awarded unless (1) a contract between the parties provides for such fees; (2) the fees are sought by a trustee of or a party who recovered or preserved a fund for the benefit of others in addition to himself; or (3) the fees are sought from a party who willfully disobeyed a court order or acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 257–9, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141, 153 (1975).

In setting out the second exception to its general holding (the only exception that appears to be applicable here), the Court in *Alyeska* cited *Mills v. Electric Auto-Lite, supra*. In *Mills*, 396 U.S. at 380, 90 S.Ct. at 619, 24 L.Ed.2d at 599 *et seq.*, the Court noted the lack of statutory authorization for attorneys' fees in a suit under § 14(a), but went on to rule that neither the absence of a statute nor the presence of statutes authorizing the award of attorneys' fees for other securities laws violations, *cf.* §§ 9(e) and 18(a), of the Exchange Act, 15 U.S.C. §§ 78i(e), 78r(a), barred the federal courts

from awarding attorneys' fees in § 14(a) cases.

The Court in *Mills* invoked the "common fund" or "common benefit" exception (set out in [2] above) to the American rule so strongly adhered to subsequently in *Alyeska*. What is most noteworthy about the *Mills* opinion is that it declares that this "common fund" exception to the American rule does not require that there actually be a "common fund" or a monetarily measurable benefit to the corporation or stockholders as a result of the suit.[1] An award is made on the theory that

> [t]o award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit. *Mills* 396 U.S. at 396–7, 90 S.Ct. at 628, 24 L.Ed.2d at 609.

Under the exception pursuant to which fees may be allowed to a party who has recovered or preserved a fund for the benefit of others in addition to himself, the requisite showing must be that (a) plaintiff had a meritorious claim, (b) a substantial benefit was conferred, and (c) the benefit was caused by the plaintiffs taking action. *See Wechsler v. Southeastern Properties, Inc.*, 506 F.2d 631 (2d Cir. 1974); *Kahan v. Rosenstiel*, 424 F.2d 161, 165, *et seq.* (3rd Cir.), *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). The burden of proof of these essentials is on the plaintiff who seeks the recovery. *Wechsler, supra*.

In the light of the record herein it is highly doubtful whether the plaintiff's complaint could have successfully withstood a test on the merits. The alleged misstatements and omissions in the solicitation material viewed in the light of the statements that were made therein appear largely to constitute mere carping criticism of anoth-

1. It should be noted that the "common fund" exception to the American Rule is described in *Alyeska, supra,* in such a way as to make it arguable that this portion of *Mills* is being overruled or cut back, i. e., that a common fund is actually required. However, the *Mills* case is cited with no limiting language and the Second Circuit adopted the broad *Mills* holding in an opinion handed down a month after *Alyeska*. *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975). The Court in *Kopet* did not, however, cite or discuss *Alyeska*.

er's form of statement of the subject matter. Indeed, it appears that with the aid of the staff of the Securities and Exchange Commission which reviewed the proposed solicitation materials, the very disclosure issues later raised by the plaintiff in its complaint were specifically focused on and reasonably satisfied, at least in the main. The ordinary reasonable reader is certainly expected to draw the ordinary plain and reasonable inferences from the statements made without having the minute detail that might otherwise appear in a trust indenture or like legal instrument spelled out. Superficially therefore it appears that the plaintiff's chances of success in the litigation were dubious.

On the subject of benefit, it does not appear that any benefit was caused by the plaintiffs taking action. The suit did not contribute to the lack of success of the solicitation nor did it frustrate the progress thereof. There is a compelling inference that the apathy of the bondholders to the proposed amendment was the cause for its abandonment. The litigation was not successful and

> the mere institution of a stockholder's action does not guarantee that the plaintiff will be awarded attorney's fees upon his suit being mooted by the successful prosecution or settlement of some other action. Causation must still be shown and the burden of establishing it remains with the plaintiff. *Wechsler v. Southeastern Properties, Inc.,* 506 F.2d 631, 635 (2d Cir. 1974).

On all the evidence submitted the Court finds that the plaintiff's suit did not influence the conduct of National in withdrawing the solicitation. Further, plaintiff has not credibly established that defendants had a purpose to circumvent any obligation to pay fees to plaintiff's attorneys. There was no settlement of the charges in the complaint—the action was discontinued for mootness. The merits of the plaintiff's charges were not tested or established in Court or to the directors of National. The lawsuit was not the causative agent for the abandonment of the solicitation. There

was no circumvention of Rule 23 Fed.R. Civ.P. by the discontinuance stipulated by the parties and approved by Court order, and the exchange offer of October 1974 was not required to be submitted to the Court in connection with this lawsuit or its discontinuance. There is no credible basis for charging defendants with bad faith.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) Federal Rules of Civil Procedure.

Application for fees is denied.

SO ORDERED.