# United States Court of Appeals for the Federal Circuit

---

**ORION TECHNOLOGY, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

**and**

**STRATEGIC RESOURCES, INC.,**
*Defendant.*

---

2012-5062

---

Appeal from the United States Court of Federal Claims in Case No. 11-CV-573, Judge Margaret M. Sweeney.

---

Decided: January 14, 2013

---

JAMES Y. BOLAND, Venable LLP, of Tysons Corner, Virginia, argued for plaintiff-appellant. With him on the brief was LARS E. ANDERSON.

ELIZABETH A. SPECK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-

appellee.  With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and CLAUDIA BURKE, Assistant Director.

———————————

Before LOURIE, CLEVENGER, and WALLACH, *Circuit Judges*.

LOURIE, *Circuit Judge*.

Orion Technology, Inc. ("Orion") appeals from the decision of the United States Court of Federal Claims ("Claims Court") dismissing its pre-award bid protest for lack of standing and, in the alternative,  because the Army acted reasonably in rejecting Orion's proposal. *Orion Tech., Inc. v. United States*, 102 Fed. Cl. 218 (2011). Because we agree that the Army acted reasonably in excluding Orion from competition, we affirm.

BACKGROUND

On December 7, 2010, the Army's Mission and Installation Contracting Command issued solicitation number W9124J-11-R-0001, an indefinite delivery, indefinite quantity multiple award task order for services at various Army installations.  That solicitation contained a number of provisions with instructions for offerors concerning how to prepare proposals (Section L) and indicating the various factors the Army would use to evaluate proposals (Section M).

Section L noted that the Army intended to award contracts without conducting discussions with offerors such as Orion, but reserved the right to do so at a later date. Section L also stated that noncompliance with the proposal requirements "may" hamper the ability of the government to evaluate the proposal and "may result in elimination of the proposal from further consideration."

J.A. 110. The solicitation also notified the offerors that they were required to "meet all solicitation requirements . . . . Failure to meet a requirement may result in an offeror being ineligible for an award." J.A. 114. Part of that submission was required to include a cost/price proposal that was "required to determine that the proposed price [was] fair and reasonable." J.A. 122. The solicitation also required that the pricing schedule must be "fully complete and error free," and must include supporting information, including subcontractor cost and pricing information. J.A. 123–24. The solicitation did not state that incomplete pricing data would disqualify a proposal. Instead, the solicitation stated that proposals with incomplete pricing data "may not be considered for an award." J.A. 124.

Section M, reciting the evaluation factors, explained how the government would evaluate the proposed costs and prices in each proposal for reasonableness and warned offerors of possible elimination from competition for failure to comply. Portions of it stated:

> 1.1.2 The Government will evaluate proposed costs and prices for reasonableness using cost and price analysis techniques. Proposed prices evaluated as unreasonable may be grounds for eliminating a proposal from competition.

> 1.13 Unrealistically low costs/prices may be grounds for eliminating a proposal from competition on the basis that the offeror has demonstrated a lack of understanding of the requirement.

J.A. 126.

Orion submitted a proposal on February 8, 2011, the last possible date under the solicitation. However, Orion omitted the proprietary cost information for five of its

eight subcontractors, contrary to the requirements of Section L. Eight days later, the Army received two packages from Orion that allegedly contained the missing subcontractor cost data. The packages were returned to Orion unopened because they were untimely.

After reviewing Orion's original submission, the contracting officer (the "CO") rejected Orion's proposal because of the missing subcontractor data:

> Your proposal failed to provide required cost/price information for your teaming partners in accordance with (IAW) Section L, paragraph 4.4.6.1.1(d). Five teaming partners, including one that is proposing over 20% of the total cost of the requirement, failed to submit cost/price information to the Government. . . . Without these submissions, the proposed productive hours, labor mix, and direct labor rates cannot be verified and evaluated. Consequently your cost/price proposal cannot be evaluated for price reasonableness and cost realism IAW Section M, paragraph 4.0.

J.A. 318.

Orion filed a protest to the CO, and the CO issued a decision denying the protest because of Orion's "failure to comply with explicit and mandatory requirements in Section L that resulted in material proposal omissions." J.A. 325. Orion then filed a protest at the Government Accountability Office ("GAO"), challenging that decision, which was also denied because of the missing "required supporting information . . . [that] precluded the agency from evaluating the proposal as contemplated by the solicitation." J.A. 399.

The Army subsequently issued Amendment Number 7 to the solicitation (the "Amendment"), notifying offerors

determined to be in the competitive range that, contrary to the original solicitation, discussions concerning the solicitation were going to be held. The Amendment consequently sought new cost/price proposals from the qualifying offerors. Orion then attempted to resubmit its cost/price proposal. However, because Orion had already been eliminated from the competition, the Army once again rejected that proposal.

Orion filed another protest to the CO, which was dismissed on the ground that Orion was not an "interested party" and thus did not have standing to protest the procurement. Orion then filed a second GAO protest, in response to which the GAO held similarly that Orion was not an interested party. Orion then filed a bid protest in the Claims Court challenging its dismissal from the competition. The government moved to dismiss and for judgment on the administrative record.

The Claims Court granted the government's motion to dismiss and held that Orion lacked standing as an "interested party" to bring a bid protest pursuant to 28 U.S.C. § 1491(b)(1) because Orion submitted a noncompliant proposal. The Claims Court also held that Orion lacked standing to challenge the second protest after the Amendment because it was still not an interested party. The court dismissed the motion for judgment on the administrative record as moot, but reasoned that it would have denied Orion's protest on the merits because it was a rational decision by the Army to exclude Orion from the competition due to the missing information. Orion appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

### DISCUSSION

We review determinations of standing *de novo*. *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375,

1379 (Fed. Cir. 2009). We review the grant or denial of a judgment on the administrative record without deference. *Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Government procurement decisions in bid protest cases are reviewed under the arbitrary and capricious standard of section 706 of the Administrative Procedure Act. *Centech Grp. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). Any underlying fact findings are reviewed for clear error. *Labatt Food Serv.*, 577 F.3d at 1379; *Bannum, Inc.*, 404 F.3d at 1354.

## I.

In a bid protest, only an "interested party" has standing to challenge a contract award. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. *Id.* Thus, a party must show 1) that it is an actual or prospective bidder and 2) that it has a direct economic interest. As the Claims Court noted, there is no dispute that Orion is an actual bidder, thus satisfying the first prong of the interested party test. *Orion Tech.*, 102 Fed. Cl. at 226. The standing dispute is only whether Orion has the required direct economic interest.

Generally, to prove the existence of a direct economic interest, a party must show that it had a "substantial chance" of winning the contract. *Rex Serv.*, 448 F.3d at 1308. An exception to that standard is when a prospective bidder challenges the terms of the solicitation itself, prior to actually submitting a bid. *Weeks Marine, Inc. v.*

*United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009). In that circumstance, the protestor can establish standing by demonstrating that it suffered a "non-trivial competitive injury which can be redressed by judicial relief." *Id.* at 1361–62.

Orion argues that the "non-trivial competitive injury" standard should apply to this post-proposal, pre-evaluation protest because there is an inadequate factual foundation for performing a "substantial chance" test because the Army did not evaluate Orion's proposal prior to determining the competitive range. Orion contends that it suffered such a non-trivial competitive injury because it was likely that its proposal would have been found reasonable and realistic if the Army had evaluated it. In addition, Orion argues that it has standing to challenge the Army's decision to reject its second proposal, submitted after the Amendment.

The government responds that the "substantial chance" test should apply here because the "non-trivial competitive injury" test is only a limited exception for pre-award, pre-bid challenges based on the solicitation alone. In this situation, the government argues that there is a sufficient factual predicate to ascertain whether Orion was harmed to justify using the substantial chance test. The government contends that, under that test, Orion did not have a substantial chance of receiving the contract because its proposal was late and was missing material information needed to perform the cost realism analysis. The government also argues that Orion does not have standing to challenge the Army's decision to reject Orion's second proposal after the Amendment.

We agree with the government that the appropriate test for standing in these circumstances is the "substantial chance" test. In *Weeks Marine*, we set out an excep-

tion to the general standing test in the case of pre-bid, pre-award protests because at that stage it is difficult, if not impossible, to establish a substantial chance of winning the contract prior to the submission of any bids:

> [W]here a prospective bidder/offeror is challenging a solicitation in the pre-award context[,] . . . it is difficult for a prospective bidder/offeror to make the showing of prejudice that we have required in post-award bid protest cases. The reason of course is that, in a case such as this, there have been neither bids/offers, nor a contract award. Hence, there is no factual foundation for a "but for" prejudice analysis. However, Article III considerations require a party such as Weeks to make a showing of *some* prejudice.

*Id.* at 1361 (citations omitted). Here, Orion is not challenging the terms of the solicitation, as was the case in *Weeks Marine*; it is challenging the Army's application of those solicitation criteria to Orion. The Army evaluated Orion's bid for compliance with the terms of the solicitation and then gave detailed reasons for rejecting Orion's proposal. In addition, Orion's bid was within the competitive range later established by the Army after Orion's exclusion but before the Army's initial response to Orion's first GAO protest. Given the circumstances, there is an adequate factual predicate to ascertain under the traditional "substantial chance" standard whether Orion was prejudiced by the Army's decision to exclude its initial proposal.

Applying the "substantial chance" standard to Orion's original proposal, Orion had standing to challenge the exclusion of its original submission. The solicitation did not mandate that Orion's proposal must be excluded. Instead, the solicitation stated multiple times that an

incomplete proposal "may" not be considered for an award. J.A. 110, 114, 124. That language is permissive, not mandatory, reserving to the Army discretion to decide whether or not to exclude Orion's proposal. The Federal Acquisition Regulations ("FAR") cited by the parties similarly do not mandate exclusion of Orion's proposal; rather, those provisions mandate the Army's obligations to verify and evaluate pricing data. *See* FAR § 15.404-1(d)(1), (2). It is beyond question that the Army had the discretion to keep Orion's proposal alive for further processing. To deny Orion standing would effectively prevent any challenge to a discretionary decision of the Army.

Moreover, had the Army not excluded Orion's proposal, Orion could have likely competed for the contract. For example, Orion's total cost/price that was provided in its original proposal was also within the later established competitive range. The Army could have evaluated Orion's proposal based on its total cost/price and rated and ranked Orion accordingly when establishing the competitive range. If the omitted data then prevented a complete realism analysis, the Army could have found the proposal unrealistic and included that issue in later discussions and allowed supplementation of Orion's proposal under FAR § 15.306(d). Alternatively, had Orion not already been excluded from the competition, it would have had a second opportunity to submit the missing data along with new cost/price volume data after the Army's later Amendment and in related discussions. The fact that the missing information was critical to the cost realism analysis and may have prevented the Army from analyzing the proposal is relevant to the reasonableness of the Army's decision-making, not to determining prejudice for standing purposes. Orion thus had standing to challenge its initial exclusion from competition.

In arriving at that conclusion, however, we do not hold that the mere timely submission of a proposal, no matter how defective, automatically confers standing under the substantial chance standard. Instead, we only conclude that under the facts of this case, where the Army had discretion to process Orion's competitive proposal, but chose not to, and where Orion's original proposal was within the later-established competitive range, we conclude that Orion had a substantial chance of receiving the contract and therefore had standing to challenge the exclusion of its proposal based on the Army's alleged arbitrary action in refusing to exercise its discretion in Orion's favor.[1] Thus the Claims Court erred in dismissing Orion's protest for lack of standing.

In addition, because the exclusion of Orion's second proposal was a direct result of the exclusion of the first proposal, our finding of standing arising from the first proposal moots the issue concerning whether Orion has standing to independently challenge the Army's refusal to consider Orion's second proposal. We therefore need not reach it.

---

[1]  Our recent precedent in *Comint Systems Corp. v. United States*, 700 F.3d 1377 (Fed. Cir. 2012), is not to the contrary. In *Comint*, we held that the contractor lacked standing because it had received a low technical rating from the agency, and thus did not have a substantial chance of winning the contract. *Id.* at 1383–84. Here, Orion received no such determination on the merits. Unlike *Comint*, this case involves the discretion of a contracting officer to exclude or consider an incomplete offer. Where the offeror has a substantial chance of succeeding if discretion is exercised in its favor, jurisdiction lies to test whether the exercise of discretion against the offeror is lawful.

## II.

The Claims Court denied the government's motion for judgment on the administrative record as moot due to Orion's lack of standing. However, the court did indicate that, if Orion had had standing, it would have denied Orion's protest on the merits because the decision to exclude Orion from competition based on the missing information was rational. An appellate court can affirm a decision of the trial court upon any ground supported by the record. *See Datascope Corp. v. SMEC*, 879 F.2d 820, 822 n.1 (Fed. Cir. 1989) (citing *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957)). Here, the trial court, after full and supplemental briefing on the merits and a hearing, gave a detailed analysis of the reasonability of the Army's exclusion of Orion's proposal from competition. While that motion was dismissed as moot, the parties have once again fully briefed the issue of the reasonability of the Army's actions. We therefore find it proper to consider the reasonability of the Army's actions.

Orion contends that the Army lacked a rational basis for rejecting its proposal because it was based on a misinterpretation of the solicitation. Specifically, Orion argues that the solicitation did not mandate the rejection of Orion's proposal because it used the term "may" instead of "shall." In addition, Orion adds that the solicitation did not mandate the evaluation of an "initial" as opposed to a "final" proposal. Orion also argues that it was arbitrary and irrational to reject the proposal before determining if the missing information was material or seeking to obtain the missing pricing information pursuant to FAR § 15.404-1(c). Orion notes that considering Orion's original proposal would not have prejudiced other offerors by giving Orion "additional time" because the missing data had no effect on the overall cost numbers.

The government responds that it was reasonable for the Army to exclude Orion because Orion failed to submit a complete proposal by the deadline, and the solicitation clearly stated that a failure to submit a complete and timely proposal was ground for elimination. The government also argues that the subcontractor cost and pricing data were required to conduct the required cost and price analysis. FAR § 15.404-1(d)(1), (2). The government also notes that the Army was not required to waive its rule requiring timely submissions and that it would have been unfair to the other offerors to waive the requirements for Orion. Finally, the government argues that once Orion was excluded, there was no reason to include Orion in the amended cost proposal discussions, as the only authorized discussions were with those previously found to be in the competitive range stage. FAR § 52.215-1(c)(3)(ii).

We agree with the trial court and the government that the Army reasonably excluded Orion's proposal from the competition. Agencies are entitled to a high degree of deference when faced with challenges to procurement decisions. *See Impresa*, 238 F.3d at 1332. A protestor such as Orion may only prevail when it is clear that the agency's determinations are irrational and unreasonable. *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003). "[T]he test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa*, 238 F.3d at 1332–33 (citations omitted) (internal quotation marks omitted).

The solicitation clearly states that an incomplete proposal "may" be disqualified. J.A. 110, 114, 124. It is undisputed that Orion's proposal as of the deadline was incomplete. The Army's letter to Orion explained the

reasons for excluding Orion's proposal, *viz.*, the failure to provide cost/price data for all of its teaming partners and various inconsistencies that rendered the cost realism analysis impossible. That cost realism analysis, as detailed in FAR § 15.404-1(d), requires the government to independently review and evaluate the proposed cost estimate to determine whether the estimates are realistic and the probable cost of performance. *See* FAR § 15.404-1(d)(1)–(2). Failing to include subcontractor cost and pricing forces the Army to make assumptions concerning the underlying data. The Army concluded that it could not make those assumptions and thus could not perform the required analysis without the missing information. The Army's conclusion that it could not perform a required mathematical analysis without the relevant data was reasonable under the circumstances, and therefore the decision to exclude Orion's original petition was likewise reasonable. The Army, in outlining that reasoning in its letter to Orion, provided the necessary coherent and reasonable explanation of its exercise of discretion.

In addition, the decision to return to Orion the unopened packages was also not unreasonable, as the solicitation set a clear deadline for submissions and warned that late proposals would not be considered. J.A. 124. As the Claims Court correctly noted, the Army was under no obligation to accept or open late-submitted proposal materials or to open discussions to obtain the missing data. *See Orion Tech.*, 102 Fed. Cl. at 232; FAR § 15.306(d). Indeed, no discussions with Orion were required because a competitive range had not yet been established, and such contact to cure deficiencies is prohibited under FAR § 52.215-1(c)(3)(ii). In short, Orion failed to submit a complete proposal by the required deadline, Orion's proposal lacked information material to the Army's cost realism analysis, and the Army acted

rationally when it excluded Orion's proposal from consideration and returned unopened the late submission of subcontractor data.

We have considered the parties' remaining arguments and do not find them persuasive. While we disagree with part of the reasoning of the trial court regarding standing, we agree with its ultimate conclusion.

CONCLUSION

The judgment of the Claims Court is

**AFFIRMED.**