NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICHAEL STAPLETON ASSOCIATES, LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, AMERICAN K-9 DETECTION SERVICES, LLC,**
*Defendants-Appellees*

-------------------------------------------------

**GLOBAL K9 PROTECTION GROUP, LLC,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant*

-------------------------------------------------

**AMERICAN K-9 DETECTION SERVICES, LLC,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant*

_____

2023-1273, 2023-1519

————————————

Appeals from the United States Court of Federal Claims in Nos. 1:22-cv-00573-RTH, 1:22-cv-00620-RTH, 1:22-cv-00630-RTH, Judge Ryan T. Holte.

————————————

Decided:  May 20, 2024

————————————

RYAN BRADEL, Ward & Berry PLLC, Tysons, VA, argued for plaintiff-appellant.  Also represented by PETER TYSON MARX.

WALTER BRAD ENGLISH, Maynard Nexsen PC, Huntsville, AL, argued for appellees American K-9 Detection Services, LLC, Global K9 Protection Group, LLC.  Global K9 Protection Group, LLC also represented by EMILY J. CHANCEY, NICHOLAS PATRICK GREER, JON DAVIDSON LEVIN; MARY ANN HANKE, Polsinelli PC, Birmingham, AL.

DANIEL J. STROUSE, Cordatis LLP, Arlington, VA, for defendant-appellee American K-9 Detection Services, LLC. Also represented by JOSHUA SCHNELL.

STEVEN JOHN GILLINGHAM, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States.  Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

————————————

Before PROST, TARANTO, and HUGHES, *Circuit Judges*.

TARANTO, *Circuit Judge*.

This appeal arises from bid protests concerning solicitations issued by the United States Postal Service (USPS)

to purchase explosive-detection services for the screening of mail placed on passenger aircraft. As relevant here, the Court of Federal Claims (Claims Court) upheld two aspects of the solicitations challenged by one of the eventual awardees, Michael Stapleton Associates (MSA), but, on challenges by other bidders, the court held that, because MSA had immitigable organizational conflicts of interest, USPS had acted arbitrarily and capriciously in allowing MSA to bid at all, and the court ordered USPS to reevaluate the 2022 solicitation and barred MSA from participation in the resulting procurement process (for simplicity, the resulting "resolicitations"). *Michael Stapleton Associates, Ltd. v. United States*, 163 Fed. Cl. 297, 308, 342 (2022) (*MSA*).

MSA appeals on the three issues just noted: the upholding of the two aspects it challenged and the ordered resolicitations in which it is barred from participating. We affirm the Claims Court's rejection of the two MSA-brought challenges. But we agree with MSA that the Claims Court erred in holding that USPS should have excluded MSA from the bidding in the challenged solicitations and therefore in ordering resolicitations.

I

A

Under 49 U.S.C. § 44901(a) and (g)(4), the Transportation Security Administration (TSA) must provide for the screening of certain mail items for explosives before they are loaded onto passenger aircraft. In 2019, USPS and TSA developed and ran a pilot program to screen for explosives, in preparation for transferring direct control over the mail-screening process from TSA to USPS (though TSA remains ultimately responsible). The pilot program sought to ensure that TSA-certified private explosive-detection canine teams could, in cooperation with USPS, perform as well as the law-enforcement explosive-detection canine teams TSA had been using. MSA, a TSA-certified cargo-

screening service provider, was selected by USPS to participate in the development of the pilot program, for which it provided two types of services: (a) initial screening by trained explosive-detection dogs; and (b) "alarm resolution," including additional screening, such as with x-rays, upon a dog's raising an alarm.

B

Based on the results of the pilot program, in September 2020, USPS, having considered whether to solicit competing bids or to enter into a contract without competition, issued a competitive solicitation for third-party canine mail-screening and alarm-resolution services (2020 Solicitation). The 2020 Solicitation expressed a "strong preference for awarding one award that will encompass all [] requirements of the [statement of work]," *i.e.*, both canine-screening and alarm-resolution services, but noted that it would "consider multiple awards, if that were determined to provide best value." J.A. 100079. MSA was awarded the entire contract on November 6, 2020, and began to perform both canine screening and alarm resolution under the contract.

Two disappointed bidders, American K-9 Detection Services (AMK9) and Global K-9 Protection Group (GK9), filed various pre- and post-award protests (including, as required, initially filing disagreements with USPS), eventually arriving, pursuant to 28 U.S.C. § 1491(b)(1), at the Claims Court, which consolidated them into a single bid-protest action. *American K-9 Detection Services v. United States*, 155 Fed. Cl. 248, 264 (2021) (*AMK9*). AMK9 and GK9 generally contended, before USPS and before the Claims Court, that the solicitation had contained various defects—among them, that the solicitation improperly favored bundling of canine-detection and alarm-resolution services, to the advantage of MSA, and that organizational conflicts of interest—because of unequal information or biased ground rules—should have disqualified MSA from

bidding. *See* J.A. 100638–40, 101965, 102019; *AMK9*, 155 Fed. Cl. at 269–70.

Before consolidating the protests, the Claims Court had remanded the case to USPS for further investigation of a possible organizational conflict of interest, particularly one stemming from MSA's special access to important information through its employment of a former TSA employee who would have had knowledge of requirements related to mail screening. *American K-9 Detection Services v. United States*, No. 20-1614, 2021 WL 1086225, at *1, *9 (Fed. Cl. March 19, 2021). In the investigation on remand, the USPS contracting officer found no conflict of interest, concluding specifically that MSA's employment of the former TSA employee and its participation in the pilot program did not give MSA an "unfair competitive advantage." J.A. 101869; *see* J.A. 101862–69.

Upon receiving those remand results, the Claims Court ruled on motions for judgment on the administrative record in the consolidated protests. The court determined that a more thorough investigation by USPS was needed and ordered a second remand to USPS with a suggestion that a different contracting officer conduct the new investigation. *AMK9*, 155 Fed. Cl. at 297. The court otherwise generally ruled against the disappointed bidders, determining, for example, that USPS had rationally issued a single solicitation for canine and alarm-resolution services, *id.* at 273, and that USPS's evaluation of AMK9's bid had not been arbitrary and capricious, *id.* at 299–304.

C

Acting on the second remand order, a new USPS contracting officer issued a decision in late 2021 (Second Remand Decision). The new contracting officer found an organizational conflict of interest under the policy set forth in USPS's Supplying Principles and Practices (SP&Ps). The finding was the result of reviewing an expanded

evidentiary record, including certain emails than had not been available to the original contracting officer.

For example, the Second Remand Decision discusses a January 2020 email sent to an MSA employee by an employee of the United States Postal Inspection Service (USPIS) who was a member of the technical evaluation committee for the 2020 Solicitation. The email included an internal USPS presentation that was not later made available to other bidders and that contained "competitively useful information" regarding the planned rollout of the screening program and projected costs and savings. J.A. 103677. The Second Remand Decision characterizes the email as giving MSA "unequal access to information," a basis for finding an organizational conflict of interest. J.A. 103677–78; *see* J.A. 103666 (citing *Turner Construction Co. v. United States*, 645 F.3d 1377, 1387 (Fed. Cir. 2011)).

The Second Remand Decision also recounts that MSA had been communicating with and assisting USPS (specifically, USPIS) "up until at least July of 2020," well after the end of the pilot program, regarding the design of a mail-screening program, which "appear[ed] to have created a competitive advantage for MSA." J.A. 103678–79. The decision notes, in this respect, that, after the pilot program concluded, MSA had helped USPIS prepare an internal document, entitled "Speed of Mail," that was not provided to bidders and that discussed how long before a work shift dogs and handlers should arrive, and MSA's bid had been rated strong with respect to its proposal of those same pre-shift arrival times. J.A. 103679–80. Based on MSA's "helping to design the program" and "communications between USPIS and MSA relating to the program design," the contracting officer found it "nearly impossible to say that MSA did not have a biased ground rules [organizational conflict of interest] and/or unequal access to information." J.A. 103679; *see* J.A. 103677.

The contracting officer examined several other concerns raised by the disappointed bidders and flagged by the Claims Court, and he found no organizational conflict of interest could rest on such concerns under the SP&Ps. For example, he noted that, despite MSA's post-pilot involvement, there was no evidence that MSA had been involved in drafting the 2020 Solicitation's Statement of Work. J.A. 103681–82. He further found that, unlike the emailed internal presentation, any extra information that MSA might have had access to through its employment of a former TSA employee would not have granted it any *unfair* competitive advantage. J.A. 103681.

Ultimately, the contracting officer recommended that MSA's contract, which would have lasted four years, until November 6, 2024, be terminated early and that USPS conduct a new competition. He also made several other recommendations, including that the USPIS employee found to have shared information with MSA "not be permitted to participate on the next technical evaluation team." J.A. 103683. Finally, he noted that, for the next solicitation, "the contracting officer . . . should consider whether MSA has an ongoing [organizational conflict of interest] that would preclude MSA from participating in the competition." J.A. 103683.

D

USPS proceeded to implement the recommendations of the contracting officer's Second Remand Decision by resoliciting the wanted services. In doing so, USPS chose, based on discussions of lessons learned from the 2020 Solicitation, to split the new competition into two separate solicitations, one for canine explosive-detection services, and the other for alarm-resolution services, which it issued in early 2022 (2022 Solicitations). In preparation for issuing the 2022 Solicitations, USPS—through the original contracting officer—conducted another review of possible organizational conflicts of interest. USPS there concluded

that the extra information to which MSA had access for the 2020 Solicitation either had become stale or would be released to all bidders and, therefore, MSA had no ongoing organizational conflict of interest.    J.A. 106794–95, 106797–99.

AMK9 and GK9 filed pre-award disagreements with the 2022 Solicitations, with AMK9 challenging only the canine explosive-detection solicitation, while GK9 challenged both of the 2022 Solicitations.  Both AMK9 and GK9 generally took issue with MSA's continued participation in the 2022 Solicitations and argued that USPS had failed to mitigate the organizational conflicts of interest identified in the Second Remand Decision.  They also argued that MSA enjoyed unfairly acquired incumbent advantages because MSA had been performing the contract awarded to it under the 2020 Solicitation, but that contract should never have been awarded to MSA because of the later-discovered organizational conflicts of interest.  MSA, for its part, filed its own pre-award disagreement protesting the division of the procurement into two separate solicitations and contending that the new solicitations were ambiguous.

All three disagreements, after being denied by the contracting officer for the 2022 Solicitations, were appealed to USPS supplier dispute resolution officials, who rejected MSA's challenge, while accepting AMK9's and GK9's challenges in part.  In particular, the official who evaluated AMK9's and GK9's disagreements concluded that, while MSA had no ongoing organizational conflict and thus should not be disqualified from competing in the 2022 Solicitations, the advantages conferred by its incumbent status, which it obtained from a flawed solicitation, could be further mitigated to make the competition fairer.  Based on that determination, the official proposed two modifications to the evaluation criteria for the 2022 Solicitations: (1) increasing the weight given to past experience in *cargo* screening, so that it would be given as much weight as past experience in *mail* screening; and (2) reducing the

minimum duration of past performance (the "look-back period") from 36 to 24 months.  J.A. 106619, 106647.  USPS subsequently implemented those changes to the evaluation criteria.  J.A. 105834–35.

E

MSA, AMK9 and GK9 all filed pre-award bid-protest complaints at the Claims Court, appealing the supplier dispute resolution officials' decisions on the disagreements with the 2022 Solicitations.  *MSA*, 163 Fed. Cl. at 313.  AMK9 and GK9 both argued for MSA's disqualification, raising overlapping objections.  *Id.* at 316–17.  AMK9 challenged four aspects of the 2022 Solicitations: It argued (1) that USPS's May 2022 modification of the evaluation criteria was insufficient, (2) that USPS's failure to disqualify MSA was arbitrary and capricious in light of MSA's "tainted incumbent advantage," (3) that USPS's conclusion that MSA no longer had a biased ground rules organizational conflict of interest was likewise arbitrary and capricious, and (4) that USPS's allowing the USPIS employee who had previously shared information with MSA to play a role in the 2022 solicitation process was unreasonable and thus arbitrary and capricious.  *See id.* at 316–17.  GK9, similarly, argued that USPS, both in modifying the 2022 Solicitations and in allowing MSA to compete, acted arbitrarily and capriciously.  *See id.* at 317.  MSA, for its part, challenged as arbitrary and capricious USPS's separation of the canine-services and alarm-resolution solicitations, assertedly ambiguous language of the 2022 Solicitation, and USPS's May 2022 update to the evaluation criteria.  *See id.* at 317–18.

While the parties' various motions for judgment on the administrative record were under consideration, USPS awarded the contracts for the 2022 Solicitations.  The canine-services contract, divided up by geographic regions, went partly to MSA, partly to AMK9, and partly to a bidder

not participating in the current action. The alarm-resolution contract went to MSA. *See id.* at 313–14.

In evaluating the parties' various challenges to the 2022 Solicitations, the Claims Court found several particular USPS actions to be arbitrary and capricious. First, the Claims Court agreed with AMK9 that USPS had arbitrarily and capriciously allowed the employee who had shared with MSA information relevant to the 2020 Solicitation to take on an improper role with respect to the 2022 Solicitations. *Id.* at 325. Specifically, the court found that allowing the employee in question to participate in "lessons learned" discussions, which occurred in preparation for drafting the 2022 Solicitations, was arbitrary and capricious in light of both (a) the Second Remand Decision, *id.* at 324–25, which directed that the employee "not be permitted to participate on the next technical evaluation team for the follow-on contract," J.A. 103683, and (b) the SP&Ps, which give contracting officers, such as the one who wrote the Second Remand Decision, the authority to take action to mitigate an organizational conflict of interest, *MSA*, 163 Fed. Cl. at 325–26. The Claims Court concluded that even though the employee in question had participated only in the "lessons learned" discussions and was not a member of the technical evaluation team, the employee had effectively provided input that "shap[ed]" and "improved" the statement of work that was issued with the 2022 Solicitations. *Id.* at 324 (alteration omitted). Consequently, despite not being "on the [technical evaluation team]," the employee had "participate[d] on the team preparing for the 2022 solicitation evaluation process" when he should have been "metaphysically walled off from the 2022 solicitation process." *Id.* at 324–25.

Second, the Claims Court agreed with AMK9 and GK9 that USPS's mitigation strategies with respect to MSA's organizational conflicts of interest lacked a rational basis. *Id.* at 333–34. The Claims Court specifically focused on the May 2022 modifications, finding that those modifications

were arbitrary and capricious because they were insufficient to mitigate MSA's unfair advantages. *Id.* at 330–32. With respect to unequal access to information, the court concluded that USPS's actions could not rationally be deemed adequate mitigation. *Id.* at 334–36. With respect to biased ground rules, the court similarly concluded that USPS could not rationally find there no longer to be an unfair advantage, so that allowing MSA to participate was irrational. *Id.* at 342, 345. In particular, the court ruled that not disqualifying MSA was irrational given the language of the SP&Ps. *Id.* at 338.

The Claims Court then concluded that USPS's actions had prejudiced AMK9 and GK9 because of the unresolved organizational conflict of interest, *id.* at 345, and, balancing the injunction factors, the court enjoined MSA from participation in the 2022 Solicitations, *id.* at 354. The Claims Court entered an order granting judgment on the administrative record and injunctive relief on November 23, 2022, and another order making the injunction final and disposing of other motions on January 31, 2023.

MSA timely appealed the Claims Court's judgment on the protests of the 2022 Solicitations, challenging three rulings. We have jurisdiction under 28 U.S.C. §§ 1295(a)(3) and 1292(c)(1).

## II

We review legal conclusions by the Claims Court without deference and factual findings for clear error. *Daewoo Engineering and Construction Co. v. United States*, 557 F.3d 1332, 1335 (Fed. Cir. 2009). We thus review the Claims Court's ultimate grant of judgment on the administrative record, as to whether the government acted without rational basis or contrary to law, without deference. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). We review related factual determinations, such as whether a protestor was prejudiced, for clear error. *Id.*

Under the Administrative Procedure Act (APA) standards applied in bid-protest cases, "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). The challenges before us are only that USPS's actions lack a rational basis, *i.e.*, are arbitrary and capricious under 5 U.S.C. § 706(2)(A), in light of USPS's SP&P's, which provide guidance for USPS procurements. No party asserts that USPS has violated any binding statute or regulation.

We "reappl[y] the 'arbitrary and capricious' standard" of the APA used by the Claims Court. *Bannum*, 404 F.3d at 1351. "Agencies are entitled to a high degree of deference when faced with challenges to procurement decisions." *Orion Technology, Inc. v. United States*, 704 F.3d 1344, 1351 (Fed. Cir. 2013). "[T]he test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa*, 238 F.3d at 1332–33 (citations omitted) (internal quotation marks omitted). The question before us, which we decide de novo, is whether USPS acted without a rational basis in allowing MSA to bid on the 2022 Solicitations and in setting the terms of the 2022 Solicitations, as modified in May 2022.

A

In the Claims Court, MSA had challenged several aspects of the 2022 Solicitations, two of which are relevant here: (1) USPS's choice to solicit canine-screening services separately from alarm-resolution services; and (2) USPS's May 2022 shortening of the past-performance look-back period. The Claims Court upheld those actions of USPS as

not arbitrary and capricious.  MSA renews those challenges on appeal.  We reject them.

With respect to the unbundling of the two types of services, MSA argues that USPS's decision to issue separate solicitations lacked any rational basis in light of the preference expressed in the 2020 Solicitation for issuing a single award.  As the supplier dispute resolution official noted, however, USPS had determined, based on its experiences with the performance of the contract arising from the 2020 Solicitation, that the canine-screening and alarm-resolution services could be successfully performed separately, and thus that a combined award was not necessary.  USPS also articulated benefits from separating the solicitations, including that issuing separate solicitations would increase the number of competitors for each service, potentially allowing USPS to obtain better value.  J.A. 106535, 106556.

Notwithstanding an initial preference for bundling—which itself might have been reasonable (an issue not before us)—USPS's unbundling choice in 2022 readily passes muster under the applicable deferential standard of review.  On this record, the agency's reasoning constitutes a "coherent and reasonable explanation" for separating the solicitations.  *Impresa*, 238 F.3d at 1333 (internal quotation marks omitted).

The May 2022 modification to the look-back period for examining past performance, shortening it from 36 to 24 months, is likewise rationally supported.  That 12-month reduction corresponds approximately to the 12-month period of experience that MSA enjoyed from the improperly conducted 2020 Solicitation.  J.A. 106619.  The adjustment reasonably furthered USPS's goals, including its need for high quality in the performance of mail screening.  Although USPS, acting under the 2022 Solicitations, would continue to take account of the quality of MSA's work during the performance of the 2020 Solicitation contract, the

shortening of the look-back period would reduce the boost MSA may have gotten from what USPS could reasonably decide—we need not say USPS was required to decide— was a flawed acquisition process in 2020, while still fulfilling its stated need, discussed further below, for technical competence. Such a decision is coherent, reasonable, and within the discretion of USPS.

B

The main issue before us is whether it was irrational for USPS to permit MSA's participation in the procurement process for the 2022 Solicitations. Considering the record before the Claims Court de novo, we agree with MSA that USPS had a rational basis for determining that MSA's former organizational conflict of interest had been mitigated sufficiently to warrant allowing MSA to bid in the 2022 Solicitations. We, again, ask "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Impresa*, 238 F.3d at 1333 (internal quotation marks omitted) (citations omitted).

The USPS SP&Ps state the basic agency policy pertinent to assessing USPS's actions in this matter for rationality:

> An organizational conflict of interest exists when the nature of the work to be performed under a contract may give an offeror or supplier an unfair competitive advantage and when an offeror or supplier has other interests that may impair its objectivity or ability to render impartial assistance or advice or to provide objectivity in performing the contract work.

United States Postal Service, Supplying Principles and Practices, General Practices 7-15.2 Organizational Conflicts of Interest (Suppliers) (2023). Only the unfair-competitive-advantage half, not the impaired-objectivity half, is genuinely at issue before us. The SP&Ps also provide

USPS discretion regarding the extent of mitigation of identified problems under the basic policy, considering whether any competitive advantage is unfair and also what actions are "necessary and in the interest of the Postal Service and offerors." General Practices 7-15.2.1 Avoiding Real or Apparent Organizational Conflicts of Interest (2023).

No party before us disputes that the SP&P's unfair-competitive-advantage policy is properly viewed, as it was in this case, as embracing two different, though related, types of skewing of a competition—if the result is an unfair competitive advantage—that are recognized in procurement standards under the Federal Acquisition Regulations: "unequal access to information" and "biased ground rules." Unequal access to information "can occur when a company has access to nonpublic information in performing a government contract that may give it a competitive advantage in a later competition for a government contract." *Turner*, 645 F.3d at 1382. Biased ground rules can be present when a company, "by participating in the process of setting procurement ground rules, ha[s] special knowledge of the agency's future requirements that may skew the competition in its favor." *Id.* In demonstrating that an agency's decision finding no organizational conflict of interest is arbitrary or capricious, "a protester must identify 'hard facts'; a mere inference or suspicion of an actual or apparent conflict is not enough." *PAI Corp. v. United States*, 614 F.3d 1347, 1352 (Fed. Cir. 2010) (quoting *CACI, Inc.-Federal v. United States*, 719 F.2d 1567, 1582 (Fed. Cir. 1983)).

USPS's original finding that MSA had unequal access to information and biased ground rules, made in the Second Remand Decision, was based on two sets of facts. First, the USPS contracting officer found that specific pieces of nonpublic information had been shared with MSA. J.A. 103677–78. Before issuing the 2022 Solicitation, however, USPS determined that a majority of this nonpublic information was no longer current or accurate for the purposes

of the 2022 Solicitation. J.A. 106794. USPS further stated that it would share the remainder of the information with all bidders. J.A. 106794–95. Neither AMK9 nor GK9 has contended that USPS failed to do this.

Second, the USPS contracting officer noted in the Second Remand Decision that the continuing communications between MSA and USPIS during 2020, after the completion of the pilot program, may have given rise to biased ground rules (*i.e.*, biased criteria to be used in the competition) or unequal access to information. J.A. 103677–80. The contracting officer noted in the decision, however, that there was no evidence that MSA had been involved in drafting the solicitation's statement of work. J.A. 103682. In its review before issuing the 2022 Solicitation, moreover, USPS noted that many of the requirements on which MSA had provided input in 2020 would be modified in the new solicitations. J.A. 106797–99. Based on the adjustments made for the new solicitation, the supplier dispute resolution official concluded that any organizational conflicts of interest affecting the 2020 Solicitation had been effectively mitigated in the 2022 Solicitations. J.A. 106616–18. Even under the basic SP&P standard of "unfair" competitive advantage, we do not see the required concrete, hard facts—regarding specific unequal information or specific biased rules for receiving an award in the competition—needed to make USPS's judgment call unreasonable.

AMK9 and GK9 also take issue with the fact that the USPIS employee who had earlier communicated with MSA participated in "lessons learned" discussions leading to the 2022 Solicitations, notwithstanding the recommendation of the Second Remand Decision that the employee "not be permitted to participate on the next technical evaluation team." J.A. 103683. The Claims Court relied on those facts to support its conclusion that USPS acted irrationally in its 2022 Solicitation, *MSA*, 163 Fed. Cl. at 325–326, but we think that the conclusion does not follow. As the Claims Court observed, the employee did not in fact participate on

the technical evaluation team for the 2022 Solicitations. *Id.* at 324. We see no inconsistency in his participation in "lessons learned" discussions with respect to the *previous* solicitation—of which the employee had already been a part. Seeking the employee's input as to lessons learned from that previous solicitation was reasonable and within the agency's discretion. And we see no concrete, hard facts showing how the employee's participation in "lessons learned" discussions produced either biased ground rules or unequal information harming AMK9 or GK9.

AMK9 and GK9 point to only one other possible justification for concluding that MSA had to be disqualified: its "tainted incumbent advantage." AMK9 Br. at 44–48; *see also* GK9 Br. at 41. Importantly, however, there is no dispute that, as the Claims Court noted in its earlier decision, "[i]ncumbent status by itself is insufficient to create an [organizational conflict of interest]." *AMK9*, 155 Fed. Cl. at 285 (internal quotation marks omitted). That recognition preserves for the public the opportunity to receive continued service from the firm (the incumbent) that might well be the best provider when re-competition occurs. In the present matter, moreover, USPS determined that it should mitigate MSA's incumbent advantage from what USPS had deemed a flawed original procurement process, and it took reasonable steps to do so by changing the evaluation criteria related to past performance. J.A. 106618–19.

The Claims Court agreed with AMK9 and GK9 that these steps were irrationally inadequate because they did not sufficiently address MSA's advantages—by, *e.g.*, wholly discounting MSA's past performance. *MSA*, 163 Fed. Cl. at 330–31. But USPS emphasized its need for expected merit in performance, given the safety and security issues associated with the possibility of hazardous materials on commercial aircraft, J.A. 106619. In such a scenario, the choice to mitigate incumbent advantage without undue sacrifice of quality of performance (however evinced) was a reasonable judgment call "entitled to a high degree of deference."

*Orion Technology*, 704 F.3d at 1351; *see also* SP&Ps, General Practices 7-15.2.1 (quoted above).  We therefore conclude that USPS "provided a coherent and reasonable explanation of its exercise of discretion," *Impresa*, 238 F.3d at 1333 (internal quotation marks omitted), not to disqualify MSA.

### III

We have considered the parties' other arguments, and we find them unpersuasive.  For the foregoing reasons, we reverse the decision of the Claims Court with respect to MSA's participation in the 2022 Solicitations and its entry of an injunction against MSA, and we affirm with respect to the other challenged terms of the 2022 Solicitations.

The parties shall bear their own costs.

**AFFIRMED IN PART AND REVERSED IN PART**